**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RUDOLPH BABCOCK,** ) | **CASE NO.  1:09CV1849** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **CITY OF CONNEAUT, et al.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #10) of Plaintiff, Rudolph Babcock ("Babcock"), for Summary Judgment; the Motion (ECF DKT #13) of Defendant, City of Conneaut, for Summary Judgment; and the Motion (ECF DKT #14) of Individual Defendants, John Williams("Williams"), Lawrence E. Gasch ("Gasch"), Lori B. Lamer ("Lamer"), and James Jones, for Summary Judgment.  For the following reasons, Babcock's motion is denied and the motions of Defendant City and the individual Defendants are granted.

**I. FACTUAL BACKGROUND**

The facts are largely undisputed.  Babcock is a resident of the City of Conneaut in the

County of Ashtabula, Ohio.  At all relevant times, Defendant Williams was the City Finance Director and a member of the Board of Review; Defendant Gasch was the City Tax Administrator; Defendant Lamer was the City Law Director and a member of the Board of Review; and Defendant Jones was City Council President and a member of the Board of Review.

The City, through a televised community bulletin board, promulgated a notice that retired persons and persons under the age of 18 were exempt from filing city income tax returns.

Babcock agreed to become a part-time minister in 2006 and 2007 for the First Congregational United Church of Christ in Conneaut.  The United Church of Christ issued Babcock a Form 1099 for the year 2006 in the amount of $12,000.00 in nonemployee compensation, and issued another Form 1099 for the year 2007 in the amount of $13,000.00 in nonemployee compensation.

On November 6, 2007, Babcock received a form letter (ECF DKT #12-2, Exhibit 1) from the City Income Tax Department, stating in part:

> Please be advised that our records indicate that you have not filed a City of Conneaut Income Tax Return for the tax year 2006. ... If you feel this notice is in error, please complete the form below and return it to our office within ten (10) days so that we may update our files accordingly.

Babcock returned the completed form by indicating "Retired," with a retirement date of August, 1998.  Babcock received a "second and final notice" on November 17, 2007 (ECF DKT #12-2, Exhibit 2 ), which he returned and checked "Retired," along with a copy of his

AARP card.  On November 28, 2007, Defendant Gasch sent Babcock a letter (ECF DKT #112-2, Exhibit 3) , reciting in part:

> Filing a City of Conneaut Income Tax Return is mandatory for anyone having earned income.  ...  For the Tax Year 2006 you received a 1099-Misc. Form from United Church of Christ in the amount of $12,000.00 for Non-employee Compensation.  This constitutes taxable income for which you must file an Income Tax Return.  The amount of tax due is $216.00 plus a $50.00 late fee for a total of $266.00.  A City of Conneaut Income Tax Return is enclosed herein.  The return and payment are due IMMEDIATELY. ...  By the way, having an AARP Membership Card does not exempt one from filing a Tax Return.  I have an AARP Card, nevertheless, I am a full-time, tax paying employee.

Babcock responded with a more-detailed letter (ECF DKT #12-2, Exhibit 8), re-affirming his claimed exemptions based upon his retirement and non-taxable  religious activities.

Similar correspondence was exchanged in 2009, with regard to the 2007 Tax Year.  On neither occasion was Babcock given written notice of any available administrative process he could pursue.  Rather, a criminal complaint was filed against Babcock in Conneaut Municipal Court, charging him with failure to file a tax return in 2006 and 2007, two First Degree Misdemeanors.  On July 23, 2009, a jury found Babcock guilty of Failure to File Income Tax Return in violation of Section 191.04(a) of the Codified Ordinances of the City of Conneaut.  At his sentencing, Babcock submitted tax returns for the relevant years as exhibits for the Court's consideration.  He completed the returns by showing zero taxable income and

by indicating, "filed under duress."  Babcock was sentenced to incarceration for six months (to be served intermittently) and a fine of $1,000.00 on each case.  He has appealed; and the appeal remains pending.

Babcock filed the instant Complaint pursuant to 42 U.S.C. § 1983, alleging violations of rights guaranteed under the United States Constitution.  In his First Cause of Action, Babcock claims denial of a liberty interest without due process of law.  Specifically, he alleges Defendants acted under color of state law to deny him "his liberty to be free from prosecution and incarceration by refusing plaintiff's right to meaningful objection and hearing through the administrative process as codified in Chapter 191 of the codified ordinances of the City of Conneaut."  The Second Cause of Action alleges denial of property interest without due process of law.  That is, Defendants, under color of state law, sought to take Babcock's property away by ordering him to file tax returns and pay tax or submit an alternative document claiming exempt status. Babcock alleges at ¶ 43:  "Having denied plaintiff any opportunity to be heard, defendants did with malice, willfully and wantonly, with specific intent to coerce plaintiff to turn his property over to defendants, and with intent to coerce plaintiff into giving up his property rights without due process, did initiate, file and prosecute criminal charges against plaintiff."  Babcock's Third Cause of Action is for the state tort of abuse of process.  At ¶ 53, he alleges:   "The defendants acted wantonly, willfully and maliciously with ulterior motive in attempts to apply the criminal process, including plea negotiations to coerce plaintiff into giving up his rights to an administrative hearing and rights to appeal."

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464

(6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

**42 U.S.C. § 1983**

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements**.**  First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and second, he must demonstrate that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

**Immunity**

The Defendants have affirmatively pled sovereign immunity under R.C. Chapter 2744, as well as qualified immunity.

R.C. § 2744.02(A)(1) recites that, except as provided in division (B), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee

of the political subdivision in connection with a governmental or proprietary function."

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Owensby v. Cincinnati*, 414 F.3d 596, 601-602 (6th Cir. 2005)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 5656 (2009). The Court first considers whether, taken in the light most favorable to the party claiming the injury, the facts alleged show that the government official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). If not, the inquiry ends and the official is entitled to qualified immunity. *Saucier*, 533 U.S. at 201.

**Due Process**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, citing *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). In analyzing procedural due process claims, courts must consider three factors: "(1) some substantive right - life, liberty or property- must be at stake;

(2) some deprivation of that substantive right must occur; and (3) the deprivation must occur without due process.  If the process for the deprivation is adequate, then no due process violation has occurred."  *Brickner v. Voinovich,* 977 F.2d 235, 237 (6th Cir.1992).

**Relevant Ordinances and Statutes**

### Codified Ordinances of the City of Conneaut

The duties of the Tax Administrator, in this case, Lawrence Gasch, are set forth in § 191.11 of the City's Codified Ordinances.  Pursuant to subsection (a), "[i]t is the duty of the Administrator to collect and receive the tax imposed by this chapter; to keep an accurate record showing the amount of tax received from each Taxpayer and the date of said receipt."  Further, in subsection (b), the Administrator is "charged with the enforcement of the provisions of this chapter and is hereby empowered to adopt and promulgate and to enforce rules and regulations relating to any matter or thing pertaining to the administration, reexamination, and correction of returns and payments and to prescribe all forms necessary or useful in the administration of this chapter."

According to § 191.13(b): "Whenever the Administrator issues ***a decision regarding a City income tax obligation that is subject to appeal***, the Administrator shall notify the Taxpayer at the same time of the Taxpayer's right to appeal the decision and the manner of such appeal."  (Emphasis added).  Under subsection (c): "Any Person dissatisfied with any determination or ruling of the Administrator made under the authority conferred by this chapter may appeal to the Board [of Review] in writing within thirty (30) days from the announcement of such ruling or decision stating why the decision should be deemed incorrect or unlawful."

Pursuant to § 191.16(a), "[a]ll applications for refunds shall be filed on a form prescribed by the Administrator within six (6) months of the Annual Return Due Date of the Applicable Tax Year ..." Under subsection (b), [s]hould it appear that any Taxpayer has paid more than the amount of tax to which the City is entitled under the provisions of this chapter, or should it be found that the tax paid or withheld was done so in error, a refund of the amount so overpaid shall be made, provided that a timely claim for refund has been filed by the Taxpayer."

### R.C. § 718.11

Plaintiff Babcock points out that R.C. § 718.11 requires a municipality to establish a procedural administrative appeal process. That section reads in pertinent part:

> Whenever a tax administrator issues a decision regarding a municipal income tax obligation that is subject to appeal as provided in this section or in an ordinance or regulation of the municipal corporation, the tax administrator shall notify the taxpayer in writing at the same time of the taxpayer's right to appeal the decision and of the manner in which the taxpayer may appeal the decision.
>
> Any person who is aggrieved by a decision by the tax administrator *and who has filed with the municipal corporation the required returns or other documents pertaining to the municipal income tax obligation at issue* in the decision may appeal the decision to the board created pursuant to this section by filing a request with the board. The request shall be in writing, shall sate

why the decision should be deemed incorrect or unlawful, and shall be filed within thirty days after the tax administrator issues the decision complained of. (Emphasis added).

**R.C. Chapter 2723**

A post-deprivation remedy can be found in the Ohio Revised Code at R.C. § 2723.01: "Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is *brought within one year after the taxes or assessments are collected.*"  (Emphasis added).

Further, it is provided at R.C. § 2723.03: "If a plaintiff in an action to recover taxes or assessments, or both, alleges and proves that he ..., *at the time of paying such taxes or assessments*, filed a written protest as the portion sought to be recovered, ... such action shall not be dismissed on the ground that the taxes or assessments, sought to be recovered, were voluntarily paid."  (Emphasis added).

**First Cause of Action – Deprivation of Liberty Interest Without Due Process**

At the outset, the Court must note, that to the extent Babcock's Complaint challenges his criminal jury trial and conviction in Conneaut Municipal Court, an action brought pursuant to 42 U.S.C. § 1983 is an inappropriate vehicle, since it constitutes a prohibited collateral attack.  *Heck v. Humphrey*, 512 U.S. 477 (1994); *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).  Furthermore, the Court must abstain from exercising jurisdiction over issues inextricably intertwined with the state court judgment, particularly one still pending on appeal.  The *Rooker-Feldman* doctrine prevents the lower federal courts

from exercising jurisdiction over cases brought by 'state-court losers' challenging state-court judgments rendered before the district court proceedings commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

As the United States Supreme Court has commented: "[W]e have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed, ...'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). "We have insisted not merely that the interest denominated as a 'liberty' be 'fundamental' ... but also that it be an interest traditionally protected by our society." *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989); *Hamdi .v Rumsfeld*, 542 U.S. 507 (2004).

Babcock explains that his "liberty interest claim is not focused upon his conviction for failure to file returns. Rather, plaintiff's liberty claim is focused upon the policy of the city to deny any process with respect to decisions of the tax administrator." (ECF DKT #15 at 1). Babcock argues the City prosecuted him "in an effort to coerce him into filing returns and paying taxes, notwithstanding plaintiff's claims of exempt status." *Id*. at 2. Babcock cites to the Texas case of *Rutherford v. U.S.*, 702 F.2d 580, 584 (1983) for the proposition that coercive actions of a government agent may amount to a denial of a liberty interest.

Babcock's assertion of deprivation of a liberty interest by the coercive conduct of Defendants is unavailing. First, precedent from the Fifth Circuit purporting to set forth a due process claim based upon an alleged liberty interest is not binding in the Sixth Circuit. Second, and more importantly, the Fifth Circuit in *Morales v. Haynes*, 890 F.2d 708, 710 (5th

Cir. 1989), rejected Babcock's interpretation of *Rutherford*: "We did not hold that the alleged conduct violated a protected 'liberty' interest, and we certainly did not hold that the defendant lost his qualified immunity by violating a 'clearly established' constitutional right."

In addition, courts have rejected the contention that a claimed right to procedural redress constitutes a liberty interest. *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980). In fact, the United States Supreme Court determined: "process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Thus, "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id*. at 250 n.12. "If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. *Reductio ad absurdum*." *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996)(quoting *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982)).

In light of the foregoing, Babcock has failed to show a substantive liberty interest is at stake for a viable procedural due process claim. Defendant City of Conneaut is entitled to summary judgment in its favor on the First Cause of Action. Moreover, Babcock has not met his burden of producing evidence sufficient to overcome the individual Defendants' qualified immunity defense. In the absence of a clearly established liberty interest of which the individual Defendants would have known, the individual Defendants, Gasch, Lamer, Williams, and Jones are entitled to qualified immunity as to Babcock's First Cause of Action.

**Second Cause of Action - Deprivation of Property Interest Without Due Process**

Babcock argues Defendants denied him any opportunity to be heard; and, with the intent to coerce him to file a return and turn over his property, i.e., pay the taxes, Defendants initiated criminal charges against him.

R.C. § 718.11 requires municipalities to establish a board of tax appeals and outlines the method for notice and appeal regarding decisions of the municipal tax administrator.  The City of Conneaut's Codified Ordinance § 191.13 creates a board of review and tracks the state's framework for notice and appeal.

The facts before the Court illustrate that Babcock and the Tax Administrator Gasch exchanged correspondence regarding Babcock's obligation to file a return for any taxable income in 2006, and again in 2007.  Although Gasch repeatedly instructed Babcock to file a return because the City was aware of at least one Form 1099 Babcock received for non-employee compensation, it is undisputed that Gasch never provided written notification of the appeal process to the Board of Review, comprised of Defendants, Lamer, Williams and Jones.  It is further unquestioned that Babcock's returns were submitted in 2009 (albeit indicating "zero" taxable income and "under duress") and that Babcock has yet to pay any municipal income taxes for the years 2006 and 2007.

Babcock has no property interest in the administrative procedure.  "So, for example, if state law establishes procedural entitlements, these are not themselves property and will not be enforced in the name of the Constitution." *Archie v. Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (citing *Olim*, 461 U.S. at 248-51 ).  "The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in

making that choice the State does not create an independent substantive right." *Olim*, 461 U.S. at 250-51.

Babcock's contention that Defendants did not follow R.C. § 718.11 nor their own City Ordinance § 191.13 does not support a viable § 1983 claim. In *Baker v. McCollan*, 443 U.S. 137, 146 (1979), the Supreme Court maintained that § 1983 does not encompass official conduct that allegedly violates only state law. The Sixth Circuit has recognized the same principle — "while the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Generally, due process is satisfied by the opportunity for hearing after taxes are collected. R.C. § 2723.01, et seq., provide for actions to recover wrongful tax payments *after* they have been collected. "Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained." *Phillips v. Comm'r*, 283 U.S. 589, 595 (1931). It has been held that as long as there is an adequate opportunity for post-seizure adjudication of rights, summary income tax collection procedures satisfy the Due Process Clause. *Griffith v. Comm'r*, 598 F.Supp. 405, 406 (N.D.Ohio 1983).

Again, in view of the preceding analysis, Babcock has failed to show a substantive property interest is at stake for a viable procedural due process claim. Defendant City of Conneaut is entitled to summary judgment in its favor on the Second Cause of Action. Furthermore, Babcock has not met his burden of producing evidence sufficient to overcome

the individual Defendants' qualified immunity defense.  In the absence of a clearly established property interest of which the individual Defendants would have known, the individual Defendants, Gasch, Lamer, Williams, and Jones are entitled to qualified immunity as to Babcock's Second Cause of Action.

**Third Cause of Action – Abuse of Process**

There are three elements necessary to establish a claim of abuse of process: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of the process." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 270 (1996).  In the instant case, Babcock contends Defendants used his criminal prosecution, properly initiated and supported by probable cause, as a "club" to compel compliance with the tax code and to avoid the administrative process.

As an initial matter, Babcock has failed to establish the second element of his abuse of process claim.  The portion of the City of Conneaut's Codified Ordinances, attached to Babcock's Motion for Summary Judgment (ECF DKT #10), includes § 191.10 - Violations, Interest, and Penalties.  At subsection (g): "Any person violates this chapter who (1) Fails, neglects or refuses to make any return ... required by this chapter"; and (3) "Fails, neglects or refuses to pay the tax, penalties or interest imposed ..."  Pursuant to subsection (h), "[a]ny Person who violates any provisions of subsection (g) hereof will be guilty of a misdemeanor in the first degree and may be assessed such penalties, including fines and/or imprisonment, as are provided for in the Revised Code for first degree misdemeanors."  Therefore,

Babcock's assertion that Defendants, Gasch, Lamer, Williams and Jones "proceeded to initiate prosecution for the purpose of getting the taxes paid."(ECF DKT #16 at 9) is not an ulterior purpose, but rather, is the very purpose for which the proceeding was designed under the City Ordinances.

Pursuant to Ohio Revised Code Chapter 2744, the City of Conneaut is a political subdivision; and "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  R.C. § 2744.02(A)(1).  Whether or not a municipality is immune from liability is a question of law.  *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).  There is no exception in R.C. § 2744.02 for intentional torts like abuse of process.  *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 452 (1994).  Thus, the City of Conneaut is immune and the abuse of process fails as to the City.

The individual Defendants, Gasch, Lamer, Williams and Jones, also enjoy immunity from liability for the abuse of process claim. R.C. § 2744.03(A)(6) provides a defense of immunity to employees of political subdivisions**,** so long as none of the exceptions enumerated in the statute applies.  One such exception is when an employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C. § 2744(A)(6)(b).  Wanton misconduct has been defined as a failure to exercise any care whatsoever.  *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St. 3d 351, 356 (1994).  The Supreme Court of Ohio has held that mere negligence is not converted into wanton misconduct unless the evidence establishes "a disposition to perversity on the part of the

-16-

tortfeasor." (*Id*. at 356, quoting *Roszman v. Sammett*, 26 Ohio St. 2d 94, 96-97 (1971)). The issue of wanton misconduct is normally a question for the jury; however, the standard for showing wanton misconduct is high. *Id*.

Babcock has submitted no evidence of malicious purpose, bad faith, wanton misconduct or recklessness. As noted previously, the City of Conneaut's Ordinances specifically provide for criminal prosecutions when a person violates the municipal law by failing to file income tax returns or by failing to pay income taxes imposed. Thus, Defendants' actions can hardly be construed as wanton, reckless, in bad faith, or with malicious purpose.

Moreover, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute *** generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Additionally, "[t]he exercise of the [prosecuting] officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." *Archer v. Cachat*, 165 Ohio St. 286, 287 (1956). Babcock has provided no relevant legal precedent nor factual evidence sufficient to overcome the immunity/privilege accorded Defendant Lamer, as City Law Director, and Defendants, Gasch (Tax Administrator), Williams (Finance Director), and Jones (President of Council and member of Board of Review).

Since Babcock failed to sustain his burden of demonstrating the challenged proceeding was perverted to accomplish an ulterior purpose for which it was not intended; and since Defendant City of Conneaut is immune from liability under Revised Code Chapter

2744; and since the individual Defendants enjoy immunity under 2744 and the common law, his Third Cause of Action for Abuse of Process fails. All Defendants are entitled to summary judgment in their favor.

### III. CONCLUSION

For all these reasons, the Motion (ECF DKT #10) of Plaintiff, Rudolph Babcock ("Babcock"), for Summary Judgment is denied; and the Motion (ECF DKT #13) of Defendant, City of Conneaut, for Summary Judgment; and the Motion (ECF DKT #14) of Individual Defendants, John Williams("Williams"), Lawrence E. Gasch ("Gasch"), Lori B. Lamer ("Lamer"), and James Jones ("Jones"), for Summary Judgment are granted as to all causes of action in Plaintiff's Complaint.

**IT IS SO ORDERED.**

**DATE: September 27, 2010**

                                         S/Christopher A. Boyko
                                         **CHRISTOPHER A. BOYKO**
                                         **United States District Judge**